37 C.C.P.A.(Patents)
**Application of WOOD.**
**Patent Appeals No. 5654.**

United States Court of Customs
and Patent Appeals.

April 3, 1950.

R. Welton Whann, Los Angeles, Cal. (James P. Burns, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting three claims, numbered 43, 44, and 45, of appellant's application for a patent for improvements in a regulator whereby the air pressure within an airplane cabin may be maintained at predetermined pressures for different flight altitudes. Thirteen claims were allowed by the Primary Examiner.

Claim 45 was considered by the Board of Appeals as illustrative. The Solicitor for the Patent Office has adhered to the same view. Appellant, however, has copied claim 43 and in his brief has discussed its respective limitations. The wording of the respective claims differs but slightly. The limitations of claims 44 and 45 define substantially the same subject matter. Claim 43, the narrowest of the three, differs primarily from the other two in the use of certain terms relative to the functioning of conventional elements.

Since the appealed claims appear to have no limitations which distinguish them in a patentable sense from one another, it is obvious that the validity of the decision appealed from may be reviewed to better advantage by the reproduction of claim 45. That claim reads as follows: "45. In a control for a pressure cabin, the combination of: a wall forming an air outlet opening from the interior of the cabin to the exterior thereof; a chamber receiving air under pressure from the interior of said cabin and having an air bleed to atmosphere which is open at all times for flow of air from said chamber to atmosphere; a diaphragm and valve structure responsive to pressure existing within said chamber for controlling the outlet of air through said air outlet opening; air passage means leading from the interior of said cabin to said chamber; absolute pressure responsive means responsive to changes in absolute cabin pressure for controlling the flow of air through said air passage means to said chamber; and differential pressure respon-

sive means responsive to the differential between cabin pressure and atmospheric pressure for controlling the supply of air through said air passage means to said chamber."

The tribunals of the Patent Office had recourse to the drawings in describing and evaluating the elements of the structure upon which appellant relied to endow his claims with patentability. We deem it advisable therefore to follow the same procedure.

The pertinent part of appellant's claimed structure and its operation was succinctly described in the decision of the board as follows:

"In effect, the device consists of a valve 14 which is automatically controlled to release pressure supplied to an enclosure 10 by a pump or supercharger 11. The re-

jected claims deal with the details of the structure which controls the operation of the valve 14. The controlling structure includes a spring-pressed diaphragm 20 which is subjected to external pressure on one side and to cabin pressure on the other side; the effect of the cabin pressure is to open the valve and release air from the cabin.

"The connection of the cabin pressure side of the diaphragm to the cabin is controlled by two means (1) A barometric bellows 48 which responds to the difference between the cabin pressure and inner evacuated pressure and (2) the other a diaphragm 42 with a spring 47 which together provide a measurement of the difference between cabin pressure and exterior pressure. These two devices so cooperate in controlling the valve 14 as to maintain cabin pressure at atmospheric pressure up to a certain altitude and above that altitude to maintain a predetermined ratio between the cabin pressure and the exterior pressure."

 Appellant admits that the regulation of the pressure in an aircraft cabin is not new with him and that a cabin pressure control system for controlling pressures is disclosed in the patent to Price. The patent to Price was cited by the examiner as illustrative of the state of the art but otherwise was not used by either of the tribunals of the Patent Office. Although the patent has been included in the transcript of the record, a description of its disclosure is considered unnecessary. In re DeBell, 158 F.2d 1021, 34 C.C.P.A., Patents, 780.

The examiner rejected the claims on three stated grounds; namely, that they were incomplete, functional, and vague. The action of the examiner was affirmed by the board as to the grounds of incompleteness and functionality, but reversed as to the grounds of vagueness. A petition filed by appellant requesting a rehearing and reconsideration of the board's decision was denied.

 The patent laws provide that before any inventor shall receive a patent for his invention, he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention. Sec. 4888, R.S., U.S.C., title 35, sec. 33, 35 U.S.C.A. § 33. The primary question is whether the appealed claims, drawn to improvements in a combination of elements, meet that requirement of the statute.

Claim 45, as well as claims 43 and 44, includes as a structural element of the claimed combination "a diaphragm and valve structure." The examiner in his statement noted that in order to be complete, appellant's servo-motor 15, which actuates the valve 14, not only must include the spring pressed diaphragm 20, but also the outer housing 22, which is divided by the diaphragm 20 into two chambers 19 and 23 (the former, an upper chamber, operating under exterior atmospheric pressure; the latter, a lower chamber, operating under interior or cabin pressure), together with the spring 55, located in the upper chamber 19, which chamber is defined by the wall 21.

The structure upon which appellant must rely to accomplish his purpose requires that the valve 14 be opened and closed in accordance with changes in air pressure so that the pressure differential on one side of the diaphragm will operate to close or partially close the valve 14. The position of the Patent Office on the point that the rejected claims are incomplete was summarized in the following excerpt from the decision of the Board of Appeals: "The Examiner rejected the claims as incomplete in that the wall 21, defining the chamber 19, and the spring 55 in said chamber, were not recited. We are in accord with this ground of rejection, since the structure recited lacks any means to cause closing of the valve 14 and, therefore, could not provide the control of cabin pressure alleged."

Involved also in the decision of the board is the affirmance of the decision of the examiner that because appellant's specification contains no disclosure that the servo-motor 15 would be operative without the spring 55, which also acts on the diaphragm 20, and because the claims fail to define the necessary element that the diaphragm is in the chamber 19 or that it is connected to the valve, the claims were incomplete.

The examiner in support of his position referred generally to the disclosure of the patent to Price stating that the differences between the device there disclosed and the device here involved were not too radical, and therefore appellant should specifically recite in his claims all of the essential features which distinguish his structure over the structure of the prior art.

Appellant states in his brief that "Claims have been allowed which define the details of construction, particularly the precise form of the diaphragm and valve structure, including the two chambers 23 and 19, the diaphragm 20 between them, and the connections to atmosphere." Appellant contends, however, that the allowed claims include but one form of appellant's invention and alleges that the appealed claims should not be limited, as the tribunals of the Patent Office have done by their concurring decision, to the details of construction of elements of a secondary nature, for the reason that others would be able to change the form of a secondary element to avoid appellant's claims and at the same time to employ the inventive features defined by the appealed claims.

Appellant in contending that the specific construction defined by the allowed claims includes but one form of his invention, has not successfully controverted the concurring decisions of the tribunals of the Patent Office to the effect that the appealed claims should include therein limitations which define in positive terms, whether broad or specific, that structure upon which appellant relies as the essential feature of his invention.

■ We have examined with care all of the arguments and authorities presented by counsel for appellant in support of his contentions before this court but we are not convinced thereby that the tribunals of the Patent Office erred in reaching the expressed conclusion that the appealed claims are invalid because they are incomplete.

In view of that conclusion, it is deemed unnecessary to consider other points raised by counsel for appellant, and the decision of the Board of Appeals is affirmed.

Affirmed.